IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM JAMES COFFMAN,

    Petitioner,                  No. CIV S-06-0454 GEB GGH P

    vs.

DAVID RUNNELS, Warden,

    Respondent.             FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

    Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his Butte County Superior Court conviction on two counts of robbery, one count of possession of a firearm by a felon, and one count of prowling, for which he was sentenced, on July 8, 2003, to a term of 21 years and four months.[1] Second Amended Petition (SAP) at 2. Petitioner raised the following grounds for relief: 1) failure of the trial court to sua sponte give a limiting instruction and 2) ineffective assistance of trial counsel. SAP at 3.

    For the reasons set forth herein, the court recommends that the petition be denied.

---

[1] Petitioner was also found to have had a "strike" conviction arising from a prior serious felony.

1

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 495, 117 S. Ct. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S.Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court

authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S.Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S.Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

III. Background

The opinion of the California Court of Appeal, Third Appellate District, contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> The first robbery occurred at a gas station in Chico on the evening of April 7, 2000, between 8:00 p.m. and 9:00 p.m. A man wearing a ski mask (which circumstantial evidence proved to be [co-defendant] Henry Leroy Harmon) entered the station, pointed a "really old-fashioned gun" at the cashier, and demanded all of her money. The cashier responded, "Yeah right." In response the assailant put the gun on the counter, "like a foot away from my stomach and fired it." The gun was apparently unloaded or misfired because the cashier was uninjured, but there was a loud noise and the store filled with smoke. The cashier relented and gave the assailant the money from the cash register. The assailant took the money, ran out the front door, and disappeared behind the building. The cashier subsequently identified a cap and ball gun belonging to Harmon as the one

3

used in the robbery.

Around the time of the robbery, a pedestrian saw a "little reddish car" with a stripe down the middle and two male occupants speed out of either the parking lot of the gas station or the parking lot immediately adjacent to it. The pedestrian was later shown photographs of [petitioner's] car, which she immediately identified as the one she saw leave the parking lot. The car in the photograph had a dent in the same place as the car she saw leave the parking lot, and both cars bore a distinctive stripe.

The second robbery occurred three weeks later at another convenience market in Chico. A man with a hooded sweatshirt entered the store, pulled an antique cowboy-style gun with a long barrel and pearl or bone white handle, and asked the owner, "You know what this is?" The owner replied, "Yes, sir" and handed the assailant cash and about $200-$300 worth of food stamps. The assailant ran out of the store and entered the passenger side of a car parked 50 to 60 yards away. The car immediately drove away.

A witness sitting under a tree across the street from the market testified that he saw a car resembling [petitioner's] circle the block three times before parking in the vicinity of the market. A short while later the witness observed the owner of the store chasing a man who entered the front passenger side of the parked car, which then "took off."

[Petitioner] and Harmon were apprehended in the early morning hours of April 29, 2000, while they were sitting in [petitioner's] car in a parking lot across the street from a convenience market in Paradise. Inside the vehicle, the investigating officer discovered a police radio scanner, a .44 caliber black powder revolver, and pantyhose that had been cut and tied at one end.

After [petitioner] was apprehended, the police found in his wallet a food stamp bearing the deposit sticker of the market. The market owner testified that he sometimes gave unmarked food stamps as change to customers who used food stamps (such as [petitioner]), but it would be rare if he handed out one already bearing a deposit stamp.

Harmon's father testified that his son owned an old-style cap and ball pistol that was rusted and would only fire one shot at a time and had to be reloaded each time to fire.

[Petitioner] was charged with two counts of second degree robbery (§ 211-counts 2 & 3) possession of a firearm by a felon (§ 12021, subd .(a)(1)-count 4), prowling (§ 647, subd. (h)-count 5), and use of a destructive device to destroy property (§ 12303.3-count 1).

The court instructed the jury with CALJIC No. 12.44, which included the following paragraph regarding [petitioner's] prior felony conviction: "[T]he previous felony conviction has already been established by a stipulation so that no further proof of that fact is required. You must accept as true the existence of this

4

1 | previous felony conviction."[2]

2 | The jury found defendant guilty of counts two through five.[3]

California Court of Appeal Opinion at 2-5. See also, People v. Coffman, 2005 WL 958409 at 1-2.

IV. Argument & Analysis

    A.  Claim 1 - Sua Sponte Limiting Instruction

Petitioner contends that the trial court erred by not sua sponte giving a limiting instruction concerning the stipulation of petitioner's prior felony for the charge of felon in possession of a firearm. SAP at 5a.

*Legal Standard*

Under California law, a trial court is "under no duty to instruct sua sponte on the limited admissibility of evidence." People v. Collie, 30 Cal.3d 43, 63-64 (1981). "There may be an occasional extraordinary case in which unprotested evidence ... is a dominant part of the

---

[2] CALJIC No. 12.44, as read to the jury, states: "The defendant is accused in count 4 of having violated section 12021(a)(1) of the Penal Code. Every person who having previously been convicted of a felony offense, [owns] or has in his possession or under his custody or control any pistol, revolver, or other firearm, is guilty of a violation of section 12021(a)(1) of the Penal Code, a crime. [¶] In this case, the previous felony conviction has already been established by a stipulation so that no further proof of that fact is required. You must accept as true the existence of this previous felony conviction. [¶] [There are two kinds of possession[:] 'actual possession' and 'constructive possession.' Actual possession requires that a person knowingly exercised direct physical control over a thing. [¶] Constructive possession does not require actual possession, but does require that a person knowingly exercise control over or right to control a thing, either directly or through another person or persons. [¶] One person may have possession alone, or two or more persons together may share actual or constructive possession. [¶] In order to prove this crime, each of the following elements must be proved: [¶] One, the person previously convicted of the felony owned or had in his possession, or had in his control a pistol, revolver, or other firearm. [¶] Two, the person had knowledge of the presence of such firearm."

[3] Count 1 (of which [petitioner] was acquitted) arose out of a pipe-bomb explosion in the restroom at the Oroville Lake Recreation Area on the afternoon of the day of the first robbery. [Petitioner's] fingerprint was found on a beer bottle in the restroom where the explosion occurred. Several witnesses saw two men in a car resembling [petitioner's] near the time of the explosion. Harmon was identified as one of the two men. A criminalist compared black powder found in the restroom with black powder found at Harmon's residence, and concluded both powders were similar, although he could not say that they originated from the same source.

5

evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose. In such a setting, the evidence might be so obviously important that sua sponte instruction would be needed to protect the defendant from his counsel's inadvertence." Collie, 30 Cal.3d 43 at 64.

The Ninth Circuit has held that it is not reversible error for a trial court not to give a limiting instruction sua sponte concerning admission of other criminal acts. United States v. Multi-Management, Inc., 743 F.2d 1359, 1364-65 (9th Cir. 1984).

Furthermore, a challenge to jury instructions does not generally state a federal constitutional claim. See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985). Habeas corpus is unavailable for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1981); see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). In order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness." Id. at 73, 112 S. Ct. at 482. The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly. Id. at 73, 112 S. Ct. at 482.

Prior to trial, petitioner's trial counsel stipulated that petitioner had previously been convicted of a felony with respect to §12021(a)(1), possession of a firearm by a felon. Reporter's Transcript (RT) at 280. The trial court instructed the jury regarding §12021(a)(1), "[I]n this case, the previous felony conviction has already been established by a stipulation so that no further proof of that fact is required. You must accept as true the existence of this previous felony conviction." RT at 966. Petitioner now contends that the trial court erred by not sua sponte issuing a limiting instruction to prevent the jury from inferring that petitioner had a propensity to commit felonies.

The Court of Appeal, Third District, denied this claim.

In People v. Collie (1981) 30 Cal.3d 43, 63-64 ( Collie ), the Supreme Court of California held that a trial court has no sua sponte duty to instruct on the limited admissibility of the defendant's past offense(s), but added that there might be such a duty in the "occasional extraordinary case" ( Id. at pp. 63-64). The court wrote: "Evidence of past offenses may not improperly affect the jury's deliberations if the facts are equivocal, the charged offense is dissimilar, or the evidence is obviously used to effect one or more of the many legitimate purposes for which it can be introduced. [Citations.] Neither precedent nor policy favors a rule that would saddle the trial court with the duty either to interrupt the testimony sua sponte to admonish the jury whenever a witness implicates the defendant in another offense, or to review the entire record at trial's end in search of such testimony. There may be an occasional extraordinary case in which unprotested evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose. In such a setting, the evidence might be so obviously important to the case that sua sponte instruction would be needed to protect the defendant from his counsel's inadvertence. But we hold that in this case, and in general, the trial court is under no duty to instruct sua sponte on the limited admissibility of evidence of past criminal conduct." (Collie, supra, at p. 64; People v. Valentine (1986) 42 Cal .3d 170, 182, fn. 7 [limiting instruction available upon defendant's request] (Valentine)].)

[Petitioner] contends that his is the "occasional extraordinary case" in which a sua sponte duty to instruct arose because the prior conviction was admitted by way of stipulation rather than through witnesses, and the stipulation, when read in conjunction with other jury instructions, permitted the jury to use the fact of the prior conviction in deciding all counts. Nearly identical arguments were rejected in People v. Griggs (2003) 110 Cal.App.4th 1137, where the parties stipulated to the prior felony element of charges that the defendant was a felon in possession of a firearm (§ 12021, subd. (a)(1)), and ammunition (§ 12316, subd. (b)(1)).[4]

With respect to the argument based on proof of the prior by stipulation rather than testimony, the Griggs court wrote: "We fail to see how a sanitized stipulation can create greater prejudice to a defendant than if the prosecution was able to present evidence, in the form of testimony or documents, of the number and nature of the defendant's prior convictions-a situation where there is no sua sponte duty to give a limiting instruction." (Griggs, supra, 110 Cal.App.4th at p. 1141.) We agree with this reasoning and adopt it herein.

People v. Coffman, 2005 WL 958409 at 2-3.

Petitioner also alleges that a limiting instruction was required due to the prosecution's closing argument. Petitioner believes that the prosecution's closing argument emphasized that petitioner had a propensity to commit felonies. Petitioner's argument is

---

[4] Most of respondent's argument is lifted almost verbatim from Griggs, supra, 110 Cal.App.4th 1137, although the case is nowhere cited in respondent's brief.

7

confusing and ultimately, incorrect.

In closing arguments the prosecution stated that petitioner was taken into custody on the morning of April 29, 2000, because he was a felon in possession of a firearm. RT at 855. This was the incident that led to petitioner's arrest. Petitioner contends this caused the jury to believe that petitioner's status as a felon was intricately intertwined with the robbery charges. Petitioner argues a limiting instruction was necessary to correct any confusion. Petitioner's argument is hard to discern and he provides no evidence in support. A review of the record reveals that the prosecution's closing argument was appropriate. The prosecution merely described the events that resulted in petitioner's arrest, that he was a felon in possession of a firearm. This led to petitioner being taken into custody which then led authorities to connect petitioner to the robberies. There does not appear to be any confusion in the prosecution's argument and any error that may have resulted was harmless.

Aside from the fact that the Supreme Court has not found "propensity" evidence to violate the Constitution, Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008), petitioner has failed to demonstrate that the lack of a limiting instruction was an error of fundamental fairness. As the court of appeal noted, the stipulation was sanitized and did not provide any details of the prior crime. Petitioner does not address how a limiting instruction by the trial court would have affected the case nor does he describe how the court of appeal's ruling was contrary to established Supreme Court authority. It is clear the trial court did not err, nor was the court of appeal's ruling contrary to federal law. As such, this claim is denied.

B. Claim 2 - Ineffective Assistance of Counsel

Petitioner contends that trial counsel's decision not to request a limiting instruction concerning the stipulation of petitioner's prior felony, qualifies as ineffective assistance of counsel. SAP at 5.

\\\\\

\\\\\

*Legal Standard*

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690, 104 S.Ct. at 2066. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S.Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693, 104 S.Ct. at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

If petitioner fails to show the challenged action by counsel was prejudicial in that it affected the reliability of the trial process, the claim of ineffective assistance of counsel may be rejected without deciding if counsel's conduct was deficient. Strickland, 466 U.S. at 697, at 104 S.Ct at 2069.

Petitioner argues that trial counsel's decision not to request a limiting instruction caused petitioner's felon status to permeate all the offenses and undermined confidence in the verdict. SAP at 5a.

The court of appeal denied petitioner's claim.

\\\\\

1   Turning to defendant's alternative argument that counsel was ineffective for failing to request a limiting instruction, in order to prevail on such a claim a defendant must establish both that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that a determination more favorable to defendant would have resulted but for counsel's unprofessional errors. (People v. Kipp (1998) 18 Cal.4th 349, 366.) In reviewing a claim of ineffective assistance on appeal, we accord great deference to trial counsel's tactical decisions (In re Fields (1990) 51 Cal.3d 1063, 1069-1070), and reverse " 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' [Citation.]" (People v. Frye (1998) 18 Cal.4th 894, 979-980.) Where the record is silent, a claim of ineffective assistance is more appropriately made in a habeas corpus proceeding than on appeal, since a habeas proceeding allows defense counsel "to explain the reasons for his or her conduct." (People v. Wilson (1992) 3 Cal.4th 926, 936.)

The record is silent regarding counsel's decision to forego a request for a limiting instruction with respect to defendant's prior convictions. As noted above, where the record on appeal fails to reflect why counsel acted or failed to act, we must affirm the judgment unless there could be no satisfactory explanation. (People v. Frye, supra, 18 Cal.4th at pp. 894, 979-980; People v. Mendoza Tello (1997) 15 Cal.4th 264, 266.) As the Griggs court observed, "whether to seek a limiting instruction is a tactical decision properly left to defense counsel, since defense counsel might conclude that the risk of a limiting instruction (unnecessarily highlighting a defendant's status as a felon) outweigh[s] the questionable benefits such an instruction would provide. [Citations]." ( Griggs, supra, 110 Cal.App.4th at p. 1141.) We agree with the Griggs court and conclude that a valid tactical reason existed for defense counsel's inaction. Therefore, defendant's ineffectiveness claim fails.

People v. Coffman, 2005 WL 958409 at 4-5.

Because the appellate court, on direct review, denied petitioner's claim on the silent record, such is not subject to AEDPA deference in this federal habeas actions. As noted by the appellate court, habeas corpus is generally the mechanism by which to seek review of claimed ineffective assistance of counsel. However, for the reasons expressed in the previous section, petitioner cannot meet his burden of showing prejudice, i.e., that the court's confidence in the outcome of the verdict is overcome. Petitioner's fear that the jury used a sterile, prior conviction for bad purposes is simply speculation, and always will be. While such is possible, on the record developed, it is very unlikely. Moreover, the court cannot conceive of how petitioner could develop such prejudice at evidentiary hearing, as the mind set of the jurors in reaching their verdict to prove prejudice is inadmissible. Fed. R. Ev. 606(b); see Fields v. Brown, 503 F.3d

802, 803 (9th Cir. 2007).  This claim should be denied.

IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: 03/26/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

ggh:ab
coff0454.hc